IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| KEVIN MCCARTY and COURTNEY MCCARTY, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | Civil Action No. 6:22-CV-00037 |
| TACKLIFE INC. and SHENZHEN TAKE TOOLS CO., LTD. and WODESHIJIKEJISHENZHENYOUXIAN-GONGSI D/B/A WORLDUS and AMAZON.COM, INC., | § § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, Kevin McCarty and Courtney McCarty, by and through their undersigned counsel, and for their causes of action against Defendants, Tacklife Inc., Shenzhen Take Tools Co., Ltd., Wodeshijikejishenzhenyouxiangongsi d/b/a WorldUS, and Amazon.com, Inc., respectfully state and allege as follows:

### PARTIES

1.  Plaintiffs, Kevin McCarty and Courtney McCarty, are individuals who, at all times relevant hereto, resided in Victoria County, Texas at 756 Westpark Avenue, Victoria, Texas 77905.

2.  Defendant, Tacklife Inc., is a foreign for-profit corporation, duly formed and existing under the laws of New York, having its principal place of business in Nassau County,

New York and an address for service of process at 24 Werman Court, Plainview, New York 11803. Defendant Tacklife engages in business in Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas. Defendant Tacklife has sufficient contacts with Texas so that, under the Texas Long-Arm Statute, it can be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service. Citation was served on the Texas Secretary of State on July 12, 2022, and the Texas Secretary of State forwarded the process to Defendant Tacklife on August 15, 2022. Defendant Tacklife has not filed an appearance, an answer, or any other pleading or motion.

3. Defendant, Shenzhen Take Tools Co., Ltd., is a foreign for-profit corporation organized and existing under the laws of the People's Republic of China with global headquarters located at Niulanqian Building, No. B714 Minzhi Road, Longhua District, Shenzhen, 518000 Guangdong, China. Defendant Shenzhen Take Tools engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant Shenzhen Take Tools's business in Texas. Defendant Shenzhen Take Tools is being served with citation in this action pursuant the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters.

4. Defendant, Wodeshijikejishenzhenyouxiangongsi d/b/a WorldUS, is a foreign for-profit corporation organized and existing under the laws of the People's Republic of China with global headquarters located at Longgangqu Pinghujiedao Huanancheng Huananxiyuan, Shenzhen, 518000 Guangdong, China. Defendant WorldUS engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant WorldUS's business in Texas. Defendant WorldUS is being served

with citation in this action pursuant the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters.

5. Defendant, Amazon.com, Inc., is a foreign for-profit corporation, duly formed and existing under the laws of Delaware, having its principal place of business in King County, Washington at 410 Terry Avenue North, Seattle, Washington 98109. Defendant Amazon has been served and filed an answer. A copy of this amended complaint is being served on Defendant Amazon's attorney of record.

## JURISDICTION

6. Plaintiffs originally filed this civil action in the 135th Judicial District Court of Victoria County, Texas, asserting that the 135th Judicial District Court of Victoria County, Texas had jurisdiction over Defendants, nonresidents of Texas, because Defendants purposefully availed themselves of the privileges and benefits of conducting activities in Texas by placing their product, which is the subject of this suit, into the stream of commerce, targeting Texas as a marketplace, and intending for their product to end up in the hands of a Texas consumer. On September 15, 2022, Defendant Amazon filed its notice of removal and removed this action to the United States District Court for the Southern District of Texas, Victoria Division under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different U.S. and foreign states and the amount in controversy exceeds $75,000, excluding interest and costs.

## VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(f)(1) because a substantial part of the events or omissions giving rise to this claim occurred in this district and a substantial part of the property at issue is situated in this district. The claim arises out of a fire that occurred at Plaintiffs' home in Victoria County, Texas.

## FACTS

8. From June 2011 to November 2020, Kevin and Courtney McCarty owned and resided at certain real property located in Victoria County, Texas at 756 Westpark Avenue, Victoria, Texas 77905.

9. On July 10, 2020, the Victoria Fire Department responded to and extinguished a building fire at the McCartys' home.

10. Upon arrival, firefighters found the garage fully involved with a partial roof collapse.

11. The Victoria Fire Department reported that the fire originated in the garage.

12. The fire caused significant damage to the McCartys' home and personal property, including household goods, clothing, and personal effects.

13. In addition, the McCartys lost the use and enjoyment of their home and incurred additional expenses that they would not have incurred but for the fire.

14. The investigation into the origin and cause of the fire conducted on behalf of the McCartys determined that a battery cell in a battery pack for a Tacklife Tools brand 600A Peak 12V Car Jump Starter that was plugged in and charging in the garage failed internally and caused the fire.

15. Upon information and belief, Defendant Tacklife and/or Defendant Shenzhen Take Tools designed, manufactured, and/or marketed the jump starter.

16. Mr. McCarty purchased the jump starter on March 31, 2018 from Defendant WorldUS's storefront on Defendant Amazon's website, as shown in the following order details:

```
amazon.com
              Final Details for Order #112-2865860-7490634
                        Print this page for your records.

Order Placed: March 31, 2018
Amazon.com order number: 112-2865860-7490634
Order Total: $65.97

                        Shipped on April 1, 2018

Items Ordered                                                                    Price
1 of: Tacklife 600A Peak 12V Car Jump Starter ( up to 6.2L Gas, 5.0L Diesel      $65.97
Engine), Power Pack Battery Booster, Portable Power Bank with Female
Cigarette Lighter Adapter & Smart Jumper Cables
Sold by: WorldUS (seller profile)

Condition: New

Shipping Address:
Kevin McCarty
756 WESTPARK AVE
VICTORIA, TX 77905-3781
United States

Shipping Speed:
Two-Day Shipping

                        Payment information

Payment Method:                         Item(s) Subtotal:       $65.97
MasterCard | Last digits: 6287          Shipping & Handling:     $0.00
                                                                ------
Billing address                         Total before tax:       $65.97
Platinum Pawn & Jewelry                 Estimated tax to be collected: $0.00
2310 N Navarro                                                  ------
Victoria, TX 77901                      Grand Total:           $65.97
United States

Credit Card transactions        MasterCard ending in 6287: April 1, 2018: $65.97

        To view the status of your order, return to Order Summary.

        Conditions of Use | Privacy Notice © 1996-2022, Amazon.com, Inc. or its affiliates
```

17. Defendant Amazon allows third parties like Defendant WorldUS to advertise and sell consumer products on its website.

18. The seller profile for Defendant WorldUS on Defendant Amazon's website provided the following detailed seller information for Defendant WorldUS:



19. Per Defendant Amazon's website, Defendant WorldUS is a Chinese business located in Shenzen, Guangdong 518000.

20. Upon information and belief, to create a seller account with Defendant Amazon, a seller must be a resident of certain countries and have the following: (1) a business email address or Amazon customer account; (2) an internationally chargeable credit card; (3) a government ID so Defendant Amazon can verify the seller's identity and protect its sellers and customers; (4) tax information; (5) a phone number; and (6) a bank account where Defendant Amazon can send the seller proceeds from its sales.

21. Upon information and belief, if a third-party seller is a business, Defendant Amazon requires the seller to represent and warrant that it is duly organized, validly existing, and in good standing under the laws of the country in which the business is registered.

22. Upon information and belief, if a third-party seller's proceeds exceed a certain amount during a certain period or if requested by Defendant Amazon, Defendant Amazon requires the seller to maintain, at the seller's expense, commercial general, umbrella, or excess liability insurance with certain minimum limits of insurance per occurrence and in aggregate, covering liabilities caused by or occurring in conjunction with the operation of the seller's business,

including products, products/completed operations and bodily injury, with policy(ies) naming Defendant Amazon and its assignees as additional insureds.

23. At Defendant Amazon's request, a seller must provide to Defendant Amazon certificates of insurance, the full insurance policy, or other documents Defendant Amazon may request for the coverage.

24. Defendant Amazon also requires that sellers defend, indemnify, and hold harmless Defendant Amazon, and its officers, directors, employees, and agents, against any third-party claim, loss, damage, settlement, cost, expense, or other liability (including, without limitation, attorneys' fees) arising from or related to the sellers' products and any personal injury or property damage related thereto.

25. Upon information and belief, Defendant Amazon has the authority to format a product's listing, including how the listing is displayed to consumers, and requires third-party sellers to communicate with Defendant Amazon's customers exclusively through Defendant Amazon's platform.

26. In addition, Defendant Amazon monitors customer complaints and negative reviews and has the option to remove products that it believes may be unsafe.

27. Defendant Amazon attracts customers to its website through its own marketing and other activities, including its direct offers for sales and its Amazon Prime membership program.

28. Mr. McCarty has been a customer of Defendant Amazon since at least 2012 and was an Amazon Prime member when he purchased the jump starter on March 31, 2018.

29. Amazon Prime members pay a membership fee in exchange for, among other benefits, receiving shipping benefits on certain products sold by Defendant Amazon or third-party sellers participating in Prime on Defendant Amazon's website.

30. While the jump starter in question was sold by Defendant WorldUS, it was purchased new by Mr. McCarty on Defendant Amazon's website, using Mr. McCarty's Amazon.com account, and the item was "Fulfilled by Amazon.com."

31. Items "Fulfilled by Amazon" (FBA) are offered by a third-party seller but shipped to Defendant Amazon's customer from one of Defendant Amazon's Fulfillment Centers.

32. Defendant Amazon also handles all customer service and product returns for FBA items.

33. Mr. McCarty paid Defendant Amazon $65.97 for the jump starter.

34. Upon information and belief, Defendant Amazon charged Defendant WorldUS a referral fee for the sale of the jump starter and collected a referral fee from Defendant WorldUS.

35. For every item sold, sellers pay Defendant Amazon a percentage of the total price, including the item price, the shipping cost, and any gift-wrapping charges, or a minimum amount, whichever is greater, as a referral fee.

36. The amount of the referral fee that Defendant Amazon charges varies depending on the product's category.

37. Referral fees are in addition to selling plan fees, which are paid by the seller per sale or per month, fulfillment fees, and any additional selling fees or optional program fees a seller may utilize to increase sales.

38. Upon information and belief, though the amount varies depending on the product, Defendant Amazon's FBA fees can amount to as much or more than 40% of the sales price of a given product.

39. Data from testing of an exemplar Tacklife jump starter performed during the investigation into the origin and cause of the fire conducted on behalf of the McCartys showed that

the device tested had differences in overall cell capacity, along with a battery management system (BMS) that does not adequately protect the lithium-ion battery from low voltage discharge and subsequent recharge.

40. The BMS for the device tested does not detect a failing cell, such as what would be caused by typical aging phenomena, which would allow a failing cell to continue to operate in the device through charge/discharge cycling even though the low voltage of the cell falls below a safe level, causing Solid Electrolyte Interface (SEI) damage.

41. The subsequent recharging of a cell after the SEI is damaged creates an unstable, dangerous battery pack capable of initiating a fire at any time.

42. When Mr. McCarty purchased the jump starter on Defendant Amazon's website, he relied on Defendant Amazon to refer him to a seller that would be responsive and available in the event that he encountered a problem with the jump starter; otherwise, Mr. McCarty expected Defendant Amazon to respond.

43. Defendants, including Defendant WorldUS, were all notified of the fire and the investigation into the origin and cause of the fire, but only Defendant Amazon responded and participated in the investigation.

44. Defendant Tacklife, Defendant Shenzhen Take Tools, and Defendant WorldUS never responded or participated in the investigation, and they have not responded to a subsequent settlement demand made on May 11, 2022.

### CAUSES OF ACTION

### Count 1 – Strict Products Liability

45. The product in question, the Tacklife Tools brand jump starter, was designed, manufactured and/or marketed by Defendant Tacklife and/or Defendant Shenzhen Take Tools and

was defective and unsafe for its intended purposes at the time it left the control of Defendant Tacklife and/or Defendant Shenzhen Take Tools. Defendant Tacklife and/or Defendant Shenzhen Take Tools failed to properly design, manufacture and/or market the jump starter, which resulted in an internal failure of one of the battery cells in the battery pack and caused the fire at the McCartys' home. While the jump starter was being used for its intended purpose, the jump starter malfunctioned and caused a fire, which should not ordinarily occur absent a product defect that existed at the time the jump starter left the control of Defendant Tacklife and/or Defendant Shenzhen Take Tools. At the time of the fire, the jump starter was in the same condition that it was in when it was originally manufactured. The failure of the jump starter was the producing cause of Plaintiffs' damages, which are within the jurisdictional limits of this Court.

## Count 2 – Negligence

46. Defendant Tacklife and/or Defendant Shenzhen Take Tools owed a duty to exercise reasonable care to avoid a foreseeable risk of injury to others, to exercise ordinary care in the design, production, and sale of their product, to prevent their defective product that was unreasonably dangerous from reaching the McCartys and causing injury, to exercise care to discover dangerous propensities of their product, and to inform users of hazards associated with the use of their product. On the occasion in question, Defendant Tacklife and/or Defendant Shenzhen Take Tools breached their duties in one or more of the following ways:

(a) by failing to ensure the Tacklife Tools brand jump starter in question was safely and properly designed, manufactured, and/or marketed;

(b) by failing to properly and adequately design, manufacture, and/or market the Tacklife Tools brand jump starter in question;

(c) by designing, manufacturing, and/or marketing the Tacklife Tools brand jump starter in question in a manner which Defendant Tacklife and/or Defendant Shenzhen Take Tools knew or should have known subjected the McCartys' property to an unreasonable risk of harm;

(d) by failing to notify the McCartys of the potential fire hazard concerning the Tacklife Tools brand jump starter in question;

(e) by failing to warn the McCartys of the potential fire hazard concerning the Tacklife Tools brand jump starter in question; and

(f) by failing to act as a reasonably prudent person would have under the same or similar circumstances.

Each of these acts and omissions, separately or in combination with others, constitutes negligence on the part of Defendant Tacklife and/or Defendant Shenzhen Take Tools and is a direct and proximate cause of the damages suffered by Plaintiffs, which are in excess of the minimum jurisdictional limits of this Court.

### Count 3 – *Res Ipsa Loquitur*

47. At this time, Plaintiffs cannot more specifically allege the acts of negligent design or manufacture on the part of Defendant Tacklife and/or Defendant Shenzhen Take Tools because facts in that regard are peculiarly within the knowledge of Defendant Tacklife and/or Defendant Shenzhen Take Tools. In the alternative, in the event Plaintiffs are unable to prove specific acts of negligent design or manufacture, Plaintiffs rely on the doctrine of *res ipsa loquitur*. In this regard, Plaintiffs will show that the character of the occurrence in question, the July 10, 2020 fire at their home, is such that it would not have happened in the absence of negligence, and that the design and manufacture of the Tacklife Tools brand jump starter in question was within the exclusive control of Defendant Tacklife and/or Defendant Shenzhen Take Tools at the time the negligence probably occurred. Plaintiffs had no means of ascertaining the method or manner in which the product was designed and manufactured, and it came into their possession in the same condition it was in when it left the control of Defendant Tacklife and/or Defendant Shenzhen Take Tools. Therefore, Defendant Tacklife and/or Defendant Shenzhen Take Tools were negligent in the design and/or manufacture of the jump starter in question, which was a direct and proximate

cause of the damages suffered by Plaintiffs. The damages suffered by Plaintiffs are in excess of the minimum jurisdictional limits of this Court.

### Count 4 – Vicarious Liability of Nonmanufacturing Seller

48. In the alternative to other counts, Defendant WorldUS is vicariously liable for the harm caused to Plaintiffs by the product in question – the Tacklife Tools brand jump starter. The manufacturer of the jump starter is insolvent and/or not subject to the jurisdiction of the Court. Accordingly, pursuant to the provisions of Section 82.003 of the Texas Civil Practice and Remedies Code, Defendant WorldUS is subject to strict liability for Plaintiffs' damages caused by the product in question, which are within the jurisdictional limits of this Court.

### Count 5 – Negligence

49. In addition to other counts, Defendant Amazon owed a duty to exercise reasonable care to avoid a foreseeable risk of injury to others and to use reasonable care when referring one person to another. On the occasion in question, Defendant Amazon breached its duties in one or more of the following ways:

(a) by referring Mr. McCarty to Defendant WorldUS, which sold Mr. McCarty a defective and unsafe product to Mr. McCarty on Defendant Amazon's website;

(b) by referring Mr. McCarty to Defendant WorldUS without verifying that Defendant WorldUS was a duly organized and validly existing business, in good standing under the laws of the country in which it was registered;

(c) by referring Mr. McCarty to Defendant WorldUS without verifying that Defendant WorldUS maintained any amount of liability insurance coverage;

(d) by failing to ensure that Defendant WorldUS was accessible and available for Mr. McCarty to sue or receive compensation from if Mr. McCarty was harmed by the Tacklife Tools brand jump starter, leaving Mr. McCarty with no recourse;

(e) by failing to use reasonable care when referring Mr. McCarty to Defendant WorldUS; and

(f) by failing to act as a reasonably prudent person would have under the same or similar circumstances.

Each of these acts and omissions, separately or in combination with others, constitutes negligence on the part of Defendant Amazon and is a direct and proximate cause of the damages suffered by Plaintiffs, which are within the jurisdictional limits of this Court.

## DAMAGES

50. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered property damage and expenses related to the loss of use of their property.

## DEMAND FOR JURY

51. Plaintiffs respectfully request that this Court empanel a lawful jury to hear this case.

## FOR THE COURT ONLY, NOT TO BE READ TO THE JURY

52. Plaintiffs hereby give notice to the Court and all parties concerned that this lawsuit is being brought and prosecuted by USAA Casualty Insurance Company (USAA CIC), a domestic corporation, organized under the laws of Texas and duly authorized to engage in the insurance business in Texas, with its principal place of business in Bexar County, Texas at 9800 Fredericksburg Road, San Antonio, Texas 78288, pursuant to its subrogation rights with respect to payments it made to or on behalf of Plaintiffs under a homeowners insurance policy bearing policy number 9051635-90E with effective dates from December 12, 2019 to December 12, 2020 and an automobile insurance policy bearing policy number 9051635-7103 with effective dates from June 12, 2020 to December 12, 2020. The policies provided Plaintiffs with coverage for a portion of the damages at issue in this lawsuit. To date, USAA CIC has paid $1,196,212.06 for the damages caused by the July 10, 2020 fire, while Plaintiffs sustained additional damages in an amount not less than $8,068.30, which were not paid for by USAA CIC.

## PRAYER

For these reasons, Plaintiffs ask for judgment against Defendants, Tacklife Inc., Shenzhen Take Tools Co., Ltd., Wodeshijikejishenzhenyouxiangongsi d/b/a WorldUS, and Amazon.com, Inc., for actual damages of $1,204,280.36, prejudgment and post judgment interest, costs of suit, and all other relief the Court deems appropriate.

Respectfully submitted,

BY: /s/ David H. Fisk

David H. Fisk
Attorney-in-Charge
Texas State Bar No. 24050602
Southern District of Texas Bar No. 1096646
2121 N. Pearl Street, Suite 300
Dallas, Texas 75201
Telephone: (312) 551-0200
Facsimile: (312) 601-2402
Email: dfisk@ghlaw-llp.com

Of Counsel:
Grotefeld Hoffman, LLP

-and-

Kevin S. Mosley
Texas State Bar No. 24093507
Southern District of Texas Bar No. 2590973
6034 West Courtyard Drive, Suite 200
Austin, Texas 78730
Telephone: (737) 226-5310
Facsimile: (737) 444-2781
Email:  kmosley@ghlaw-llp.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022, a true and correct copy of the foregoing was served on the following counsel of record via the Court's CM/ECF system and/or by direct email:

Clifford L. Harrison and Teia Kelly
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street, Suite 800
Houston, TX 77002

**Attorneys for Defendant Amazon.com, Inc.**

David H. Fisk